UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  13-23279-CIV-ALTONAGA/Simonton

**RANDELL BAISDEN** and
**MARIO PEREZ**,

      Plaintiffs,

vs.

**ALLIED AVIATION LLC**;
**ALLIED AVIATION FUELING
OF MIAMI, INC.**; and **ALLIED
AVIATION HOLDINGS, CORP.**,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court for a hearing on January 16, 2014 on Defendants,

Allied Aviation LLC ("Allied Aviation"); Allied Aviation Fueling of Miami, Inc. ("Allied

Fueling"); and Allied Aviation Holdings, Corp.'s ("Allied Holdings['s]") (collectively, the

"Allied Companies['s]" or "Defendants['s]") Motion to Dismiss . . . ("Motion") [ECF No. 15],

filed November 13, 2013.  Plaintiffs, Randell Baisden ("Baisden") and Mario Perez ("Perez")

filed their Response . . . ("Response") [ECF No. 20] on December 2, 2013.  On December 6,

2013, Defendants filed their Reply . . . ("Reply") [ECF No. 34].[1]  The Court has carefully

considered the parties' written submissions, oral arguments, the record, and applicable law.

_____

[1]  Plaintiffs filed a Motion for Leave to File Surreply . . . ("Motion for Leave") [ECF No. 25] on
December 10, 2013.  The Court denied the Motion for Leave, but explained the parties would be afforded
the opportunity to refine their positions on the Motion during oral argument.  (*See* [ECF No. 28]).

# I. BACKGROUND[2]

Plaintiffs bring this action against Defendants "for negligently maintaining, managing[,] and/or operating the fuel farm at the Miami International Airport." (Compl. 1[3]).  Defendants are alleged to "be the largest American domestically owned provider of fueling services to the commercial aviation industry."  (*Id.* ¶ 4).

On March 23, 2011, there was a large fire at the fuel farm at Miami International Airport ("MIA").  (*See id.* ¶ 12).  The fire was caused by the mechanical failure of one of the fuel pumps, which in turn caused a chain reaction resulting in a fiery explosion.  (*See id.* ¶ 13).  Defendants' failure to properly maintain and operate the fuel pump led to its mechanical breakdown.  (*See id.* ¶ 14).  Because of the explosion and subsequent fire, American Airlines had to cancel over one hundred flights from the date of the fire through March 29, 2011.  (*See id.* ¶¶ 15, 18).  As a result of these cancellations, thousands of passengers were left stranded and incurred out-of-pocket expenses.  (*See id.* ¶¶ 16–17).

Baisden and Perez were among the passengers whose flights were cancelled.  (*See id.* ¶¶ 2, 3).  Baisden, a Broward County resident, was scheduled to fly from New Orleans, Louisiana to Miami, Florida on March 25, 2011.  (*See id.* ¶ 2).  His flight was cancelled, and he incurred the expense of staying an additional night at a hotel in New Orleans.  (*See id.*).  Perez, also a Broward County resident, had a return ticket to travel from New Orleans to Miami, and his flight was cancelled.  In contrast to Baisden, Perez paid the additional costs for an alternate flight to Orlando, Florida and then drove the remaining distance to Ft. Lauderdale, Florida.  (*See id.* ¶ 3).

---

[2]  The allegations in Plaintiffs' Class Action Complaint ("Complaint") [ECF No. 1], filed on September 10, 2013, are taken as true.

[3]  Because the pages contained in the Complaint are not numbered, the Court refers to the page numbers provided by the Court's electronic case management ("CM/ECF") system.

Plaintiffs seek monetary compensation for themselves and a putative class of others similarly situated "for the costs incurred in rescheduling airfare, obtaining hotel accommodations, ground transportation[,] and/or food expenses." (*Id.* 14). The Complaint contains six grounds for relief against Defendants: (Count I) negligence as to Allied Aviation; (Count II) negligence as to Allied Fueling; (Count III) negligence as to Allied Holdings; (Count IV) strict liability as to Allied Aviation; (Count V) strict liability as to Allied Fueling; and (Count VI) strict liability as to Allied Holdings. (*See generally id.*). Defendants seek dismissal of the Complaint in its entirety for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).[4]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

---

[4] The Response concedes dismissal of Counts IV, V, and VI is proper. (*See* Resp. 4).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## III.  ANALYSIS

Defendants contend the Complaint fails to state a *prima facie* case for negligence because Plaintiffs fail, as a matter of law, to sufficiently allege a duty is owed to them for what are alleged to be purely economic damages.  (*See* Mot. 4).  The Court agrees.

In Florida, to properly state a claim for negligence, a complaint must allege: (1) a duty or obligation on the part of the defendant to protect the plaintiff from unreasonable harm; (2) the defendant breached that duty; (3) the injury sustained by the plaintiff was proximately caused by the defendant's negligent conduct; and (4) actual loss or damage was incurred. *See United States v. Stevens*, 994 So. 2d 1062, 1066 (Fla. 2008).  Regarding the first element, "establishing the existence of a duty of care under [Florida's] negligence law is a minimum threshold legal requirement that opens the courthouse doors . . . , and is ultimately a question of law for the court rather than a jury." *Williams v. Davis*, 974 So. 2d 1052, 1057 n.2 (Fla. 2007) (citation omitted). A legal duty may arise from four sources: (1) legislative enactments or agency regulations; (2) judicial interpretations of legislative enactments or agency regulations; (3) other judicial precedent; and (4) the general facts of the case.  *See McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla. 1992) (citation omitted).

According to Plaintiffs, the duty allegedly owed to them falls within the fourth category — a legal duty arising from the general facts of the case, on the basis that Defendants' conduct created a foreseeable zone of risk.  (*See* Resp. 6).  "Where a defendant's conduct creates a *foreseeable zone of risk*, the law generally will recognize a duty placed upon defendant either to

lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *McCain*, 593 So. 2d at 503 (emphasis in original; citations omitted). "[A]s a general proposition[,] the greater the risk of harm to others that is created by a person's chosen activity, the greater burden or duty to avoid injury to others becomes." *Stevens*, 994 So. 2d at 1067 (alterations added). "In applying the 'foreseeable zone of risk' test to determine the existence of a legal duty," the court must "focus[] on the likelihood that a defendant's conduct will result in the type of injury suffered by the plaintiff. This . . . requires a court to evaluate whether the *type* of negligent act involved in a particular case has so frequently previously resulted in the *same type* of injury or harm that 'in the field of human experience' the same *type* of result may be expected again." *DaimlerChrysler Ins. Co. v. Arrigo Enters., Inc.*, 63 So. 3d 68, 74 (Fla. 4th DCA 2011) (emphasis in original; quoting *Pinkerton-Hays Lumber Co. v. Pope*, 127 So. 2d 441, 443 (Fla. 1961)).

At first glance, Plaintiffs would appear to satisfy the "foreseeable zone of risk" definition. Defendants' complained-of conduct consists of negligently operating a fuel farm that supplies fuel to MIA's airlines. Because of a fire at the fuel farm, fuel service was interrupted and American Airlines had to cancel several flights. Plaintiffs' flights — from New Orleans to Miami — were among those cancelled. When flights are cancelled, passengers are among those foreseeably inconvenienced. Plaintiffs were passengers, and as a consequence of the cancellations, they were inconvenienced, incurring additional travel expenses they now seek to recover. Certainly the type of negligent act alleged has so frequently previously resulted in the same type of injury or harm that in the field of human experience the same type of result may be expected again. *See DaimlerChrysler Inc. Co.*, 63 So. 2d at 74.

But satisfying the "foreseeable zone of risk" definition is not synonymous with satisfying

the first element of a negligence claim — the existence of a duty — where Plaintiffs allege purely economic injuries. (*See* Compl. ¶ 17). "Duty is an allocation of risk determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed. . . . The capacity to bear or distribute loss is a factor to consider in allocating the risk." *Levy v. Fla. Power & Light Co.*, 798 So. 2d 778, 780 (Fla. 4th DCA 2001) (quoting *Vaughan v. Eastern Edison Co.*, 719 N.E. 2d 520, 523–524 (Mass. App. Ct. 1999) (internal quotation marks and citations omitted)). "Finding that a legal duty exists in a negligence case involves the public policy decision that a defendant should bear a given loss, as opposed to distributing the loss among the general public." *Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 409 (Fla. 4th DCA 2005) (internal quotation marks and citation omitted).

Consequently, "[i]n negligence law, the concept of 'duty' has two components: (1) *the relationship that justifies placing a requirement of care upon the defendant*, and (2) the general standard of care that defines the risks to be foreseen by the defendant and the level of care to be imposed upon the defendant." *Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 534 n.6 (Fla. 2d DCA 1999) (emphasis and alteration added; citations omitted). In "[d]ifficult economic loss cases," courts "examine the relationship between the parties to determine whether it warrants creating a duty to protect economic interests outside contract and statutory law." *Id.* (alteration added). As explained by the court in *Monroe*, attaching a duty of care to protect purely economic interests is philosophically incongruous with the traditional scope of the law of negligence:

> The law of negligence effectively creates a social contract of safety. From an economic perspective, traditional common law judges decided that these purely intangible economic risks were matters that should be left as externalities borne by the party that experienced them rather than as costs internalized into the social contract of safety. . . . This theory suggests that the judiciary should be adverse to expanding the "social contract" created by negligence law to protect economic

6

> losses unless the court can safely conclude that, had the public been free to bargain and pay for the standards of care arising from these duties in negligence, it is virtually certain that objective buyers of safety and sellers of care would have created contractual obligations comparable to duties imposed by the court. This social contract of negligence has similarities to statutory law, and thus the court usually creates a new general standard of care in negligence protecting economic interests only when the need to provide the protection is so clear that no legislative guidance is required.

*Monroe*, 746 So. 2d at 535 (internal citation and footnote call number omitted).

"[T]ort law is largely concerned with the allocation of risks; and the determination of who should bear those risks, which determinations have far-reaching consequences" the courts must be mindful of. *Arenado v. Fla. Power & Light Co.*, 523 So. 2d 628, 629 (Fla. 1988) (alteration added); *see also Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34, 35 (11th Cir. 1982) (holding vessel owners could not recover for purely economic injuries resulting from delayed passage through the port of Tampa where defendants' allegedly negligent conduct caused the main ship channel in the port to close for twenty-six days). "Where the plaintiff seeks only the recovery of an economic loss, the duty element of negligence law serves as an important barrier to over-extension of liability." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339–40 (11th Cir. 2012) (footnote call number omitted) (citing *Indem. Ins. Co. of N. Am. v. Am. Aviation*, 891 So. 2d 532, 546 (Fla. 2004) (Cantero, J., concurring)); *see also Onita Pac. Corp. v. Trs. of Bronson*, 315 Or. 149, 159 (1992) ("[W]here the recovery of economic losses is sought on a theory of negligence, the concept of duty as a limiting principle takes on a greater importance than it does with regard to the recovery of damages for personal injury or property damage." (alteration added; footnote call number omitted)).

Plaintiffs' relatively minor, purely economic injuries resulting from flight cancellations — the monetary costs of procuring lodgings and alternate travel in and from New Orleans — while certainly "foreseeable," are outside the boundaries of recovery. If Plaintiffs, having

suffered no personal injuries or property damage, are permitted to recover expenses caused by flight cancellations resulting from interrupted fuel service, then every air, rail, auto and marine passenger prevented from getting to where he or she needs to go, at the time he or she wants to get there, as a result of the negligence of a service provider (caterers, mechanics, baggage operators, etc.) servicing the travel operator, will have a cause of action against those who caused the delay or travel cancellation.  Federal courts neither desire nor are equipped to take on the virtually limitless amount of litigation that would ensue if the Court accepts the present scenario as constituting a foreseeable zone of risk from which a defendant's duty arises in the absence of any personal injury or property damage or other special relationship (the absence of which is addressed below).  To allow this class action to proceed is to invite groups of travelers to file class action lawsuits in federal courts every time their mode of transportation is delayed or disrupted.  That scenario is untenable.

Plaintiffs do not allege any particular relationship with Defendants; the parties are, essentially, strangers.  In light of such an attenuated relationship between Plaintiffs and Defendants, the circumstances presented here cannot serve as a basis for the existence of a cognizable duty of care under traditional negligence principles which generally do not protect against economic injury alone.  *See, e.g.*, *Baker v. Norfolk S. Ry. Co.*, No. 1:07-0153-MBS, 2007 WL 2156696, at *1–2 (D.S.C. July 26, 2007) (finding a railroad company whose train derailed, spilling chlorine gas and allegedly causing the closure of a mill and its feeder mill, owed no duty to the employees of the feeder mill for lost earnings that resulted from the mill's closure); *Aikens v. Debow*, 541 S.E. 2d 576 (W.Va. 2000) (finding a truck driver and his employer did not owe a duty of care to the plaintiff, a motel and restaurant operator, who sought damages for loss of income after an accident involving the truck driver resulted in the prolonged closure of a bridge

Case No. 13-23279-CIV-ALTONAGA/Simonton

near the plaintiff's businesses).

Plaintiffs nevertheless rely on *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216 (Fla. 2010), to support their argument the Allied Companies owe them a duty of care.  In *Curd*, the Florida Supreme Court was asked to answer the following question: "Does Florida recognize a common law theory under which commercial fishermen can recover for economic losses proximately caused by the negligent release of pollutants despite the fact that the fishermen do not own any property damaged by the pollution?"  *Id.* at 1217 (capitalization removed).  After discussing several cases in other jurisdictions where similar questions had been confronted, *see id.* at 1224–27, the court concluded the defendant owed a duty to the fishermen that "arose out of the nature of [the defendant]'s business and the special interest of the commercial fishermen in the use of the public waters[,]" *id.* at 1228 (alterations added).  The court further explained, "the special interest of the commercial fishermen to use those public waters to earn their livelihood" was "an interest not shared by the general community."  *Id.*  The narrow holding of *Curd* applies to commercial fishermen, whose "peculiar interests" and "livelihoods" depend on the cleanliness of the waters where they make their living, and which distinguish them from the general public. *See In re Exxon Valdez*, No. A89-0095-CV (HRH), 1994 WL 182856, at *8 (D. Ak. Mar. 23, 1994) ("Legal liability does not always extend to all of the foreseeable consequences of an accident.  In the area of harm to one's body, the reach of what is recoverable is very great. Where one's property is injured, the extent of legal liability is considerable . . . .  Where pure economic loss is at issue — not connected with any injury to one's body or property, and especially where that economic loss occurs in a marine setting — the reach of legal liability is quite limited except as to commercial fishermen."); *see also Virgilio*, 680 F.3d at 1340, n.31 (noting the Florida Supreme Court would not require a finding that defendant-developers of a

9

Case No. 13-23279-CIV-ALTONAGA/Simonton

residential community owed plaintiff home-buyers a duty to inform them of the land's proximity to a former bombing range, resulting in loss of value to plaintiffs' properties, for in *Curd*, unlike in *Virgilio*, the fishermen-plaintiffs "had a 'special interest' in the property — the marine life — that had been damaged." (quoting *Curd*, 39 So. 3d at 1228)).

Here, Plaintiffs are not engaged in any special or peculiar use of MIA, nor do Plaintiffs' livelihoods depend on air travel.  Their interest in engaging in air travel is no different than that of the general traveling public — fast and (relatively) convenient transportation.  Although that interest was frustrated by the fire at MIA and the resulting cancellation of their flights, Plaintiffs and the thousands of other passengers affected by the cancellations were presumably able to make alternate arrangements to fulfill their needs — an option not available to the commercial fishermen in *Curd*.  As Plaintiffs have not alleged a special interest in air transportation nor any other discernible special interest distinct from that of the general public, Plaintiffs' situation is clearly distinguishable from the commercial fishermen in *Curd*.

Lastly, Plaintiffs also cite to *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246 (1985), describing it as a case presenting a similar factual scenario to the present action.  (*See* Resp. 10-11)  Yet in *People Express*, a *commercial airline* brought suit against a neighboring railroad corporation after a tank car exploded, forcing the airline to evacuate the premises and interrupting the airline's business.  *See* 100 N.J. at 248–49.  The court was not confronted with the claims of disrupted airline employees or travelers.  Indeed, while finding the railroad owed a duty of care to the commercial airline, the court in *People Express* went on to narrow the scope of its holding:

> We stress that an identifiable class of plaintiffs is not simply a foreseeable class of plaintiffs.  For example, members of the general public, or invitees such as sales and service persons at a particular plaintiff's business premises, or persons travelling on a highway near the scene of a negligently-caused accident,

such as the one at bar, who are delayed in the conduct of their affairs and suffer varied economic losses, are certainly a foreseeable class of plaintiffs. Yet their presence within the area would be fortuitous, and the particular type of economic injury that could be suffered by such persons would be hopelessly unpredictable and not realistically foreseeable. Thus, the class itself would not be sufficiently ascertainable.

*Id.* at 263–64.

Plaintiffs, like the inconvenienced motorists discussed in *People Express*, are far too attenuated a class of plaintiffs for liability to attach for mere inconvenience and purely economic injuries. As fittingly expressed by the court in *Monroe*:

By analogy, if a plaintiff loses a job or other business opportunity because he was delayed, but unharmed, in an automobile accident, he has no cause of action against the negligent driver for economic losses. The common law has long explained that the lost income was a remote injury or was not a legal injury, or said that the driver owed no duty or had no standard of care to protect against the risk of these losses.

746 So. 2d at 538 (citations omitted). Likewise, Defendants have no duty to protect Plaintiffs from purely economic injuries. As a result, Plaintiffs have failed to adequately plead a claim for negligence.[5]

## IV. CONCLUSION

Based on the foregoing, it is

---

[5] Plaintiffs also state Defendants are liable in negligence pursuant to the undertaker's doctrine, and they cite to *Clay Electric Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185–86 (Fla. 2003), to support their position. As adopted in *Johnson*, the Restatement (Second) of Torts section 324A provides, "[o]ne who undertakes . . . to render services to another which he should recognize as necessary for the protection of *a third person or his things*, is subject to liability to the third person for *physical harm* resulting from his failure to exercise reasonable care to protect his undertaking . . . . *Johnson*, 873 So. 2d at 1186 (citing Restatement (Second) of Torts § 324A (1965) (alterations and emphasis added)). The undertaker's doctrine is distinctly inapplicable. *See, e.g.*, *Casamassina v. U.S. Life Ins. Co. in City of New York*, 958 So. 2d 1093, 1102 (Fla. 4th DCA 2007) ("We find the undertaker's doctrine of [*Johnson*] to be inapplicable; this is not a case involving 'physical harm' within the meaning of Section 323 of the Restatement (Second) of Torts (1965)." (alteration added)).

Case No. 13-23279-CIV-ALTONAGA/Simonton

**ORDERED AND ADJUDGED** that Defendants' Motion **[ECF No. 15]** is **GRANTED**.

Plaintiffs' Complaint [ECF No. 1] is **DISMISSED with prejudice**.  The Clerk is directed to

**CLOSE** the case, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 6th day of February, 2014.

_____

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record